UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| CONNIE HALE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 2:24-cv-00008 |
| JOHN MICHAEL WOODWARD, CLOUDCOOKIES, LLC, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court in this employment dispute is Defendants John Michael Woodward and CloudCookies, LLC's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 9). Plaintiff Connie Hale, proceeding through counsel, filed a belated response in opposition. (Doc. No. 14). For the following reasons, Defendants' Motion will be granted, and this case will be remanded for lack of subject-matter jurisdiction.

**I.  BACKGROUND AND FACTUAL ALLEGATIONS[1]**

Hale is a Tennessee resident, and both Defendants reside in Arizona. (Doc. No. 1 ¶ I.A). In or around May 2022, Hale allegedly entered into an oral employment agreement with Defendants "to provide services to John Michael Woodward . . . and his closely-held Arizona limited liability company, CloudCookies, LLC." (Id. ¶ II.A). In return, "Hale would be assigned to the position of 'Account Executive' under an 'at will employment arrangement that included Defendants' obligation to pay to [Hale] a 10% commission on all sales generated by [Hale] for the benefit of the company." (Id. ¶ II.B). Although Hale "was promised a comprehensive, detailed

---

[1] The Court draws the facts in this section from the Complaint (Doc. No. 1-1) and assumes the truth of those facts for purposes of ruling on the instant motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

written contract including more specific terms and details of the agreement, . . . no written agreement was ever executed by both parties." (Id. ¶ II.C).

In her role as Account Executive, Hale claims she "actively advanced account sales for the benefit of CloudCookies for a broad range of customers, including Brown's Shoes, Door Dash, and other prospects." (Id. ¶ II.F). But those projects "were never finalized" because "Hale terminated her arrangement with the Defendants upon identifying apparent bad-faith misrepresentations regarding the payment for" her work. (Id.). Hale claims she "was not paid" for "the consummation of the customer sales" she helped advance. (Id.). She further alleges that as part of her role, she was required to front "work-related travel expenses" for which she was never reimbursed. (Id.).

On February 24, 2023, Hale filed a lawsuit against Defendants in Tennessee state court for "reckless/intentional tortious misrepresentation," "breach of oral contract," "detrimental reliance/unjust enrichment," and "violation of T.C.A. § 50-2-103 and 104." (Id. ¶¶ III, IV, V, VI). Hale claims that "[i]n total," she is "owed the sum of $12,197.02 for the document sales projects and travel reimbursement completed by her during her brief tenure with the Defendants." (Id. ¶ II.F). She also "requests compensatory and punitive damages in the amount of $100,000.00 . . . for the tortious misrepresentations made by the Defendants." (Id. ¶¶ VII.A). These alleged "misrepresentations" consist of statements involving "the existing status of the company, and Woodward's future intent and promises, known by Woodward to be false at the time the representations were made." (Id. ¶ III.A).

On February 19, 2024, Defendants removed the instant action to this Court. (See Doc. No. 1). On February 26, 2024, Defendants filed a partial answer to the Complaint and asserted various counterclaims, including a federal claim under the Federal Defend Trade Secrets Act, 18 U.S.C. §

1836, et seq., involving Hale's failure to return her company-issued laptop computer. (Doc. No. 10 at ¶¶ 84–97). On that same day, Defendants filed the instant Rule 12(b)(6) motion to dismiss Hale's claims for "reckless or fraudulent" misrepresentation and wage claims under Tennessee Code Ann. §§ 50-2-103 and 104. (Doc. Nos. 8; 9 at 3–8). Woodward also requests that he be dismissed from this action entirely. (Doc. No. 9 at 8–9).

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the complaint meets this standard, the Court must accept all of the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). And "[w]hile the complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" or "a formulaic recitation of a cause of action's elements[.]" Blackwell, 979 F.3d at 524 (internal quotation marks omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Where, as here, the plaintiff's claims are based on fraud, Rule 9(b) provides that the complaint must state with particularity the circumstances constituting fraud. See Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that the plaintiff specify the who, what, when, where,

3
Case 2:24-cv-00008 Document 15 Filed 04/09/24 Page 3 of 12 PageID #: 109

and how of the alleged fraud." Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 877 (6th Cir. 2006) (citation and internal quotation marks omitted); see also United States ex rel. SNAPP, Inc. v. Ford Motor Co., 532 F.3d 496, 504 (6th Cir. 2008). "The Rule's purpose is to alert defendants 'as to the particulars of their alleged misconduct' so that they may respond." Chesbrough v. VPA, PC, 655 F.3d 461, 466 (6th Cir. 2011) (quoting United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 503 (6th Cir. 2007)). "The heightened pleading standard is also designed to prevent fishing expeditions, to protect defendants' reputations from allegations of fraud, and to narrow potentially wide-ranging discovery to relevant matters." Id. at 466–67 (citations and internal quotation marks omitted); see also Bennett v. MIS Corp., 607 F.3d 1076, 1101 (6th Cir. 2010).

### III. ANALYSIS

#### A. Defendants' Motion is Deemed Unopposed

As an initial matter, Hale did not file a timely response to Defendants' motion. When a plaintiff fails to respond to arguments in a motion, she waives any opposition to that argument. See Humphrey v. United States Att'y Gen.'s Office, 279 F. App'x 328, 331 (6th Cir. 2008) (citation omitted). Likewise, Local Rule 7.01(a)(3) provides that "any party opposing a motion [to dismiss] must serve and file a memorandum of law in response . . . not later than fourteen (14) days after service of the motion." L.R. 7.01(a)(3). "If a timely response is not filed, the motion shall be deemed to be unopposed[.]" Id. Hale's deadline to file a response in opposition to Defendants' motion to dismiss was March 11, 2024. That deadline came and went with no filing, and Hale did not request an extension. Instead, on April 3, Hale submitted a belated response without explanation or justification for why she failed to comply with this Court's Local Rules.

Accordingly, Defendants' motion is deemed unopposed and could very well be granted on this basis alone. As explained below, however, the Court will also grant Defendants' motion for

the independent reason that Hale's claims fail on the merits.

> B. The Complaint Fails to State a Claim for "Reckless/Intentional Tortious Misrepresentation"

In Tennessee, "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are different names for the same cause of action and involve the same elements. See Hodge v. Craig, 382 S.W.3d 325, 342 (Tenn. 2012) (citations omitted). Regardless of the nomenclature, "[t]he elements of a fraud claim are: (1) an intentional misrepresentation of material fact; (2) the misrepresentation was made knowingly, without belief in its truth, or recklessly without regard to its truth or falsity; (3) the plaintiff reasonably relied on the misrepresentation and suffered damages; and (4) the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must embody a promise of future action without the present intention to carry out the promise[.]" Power & Tel. Supply Co., Inc. v. SunTrust Banks, Inc., 447 F.3d 923, 931 (6th Cir. 2006) (internal quotation marks omitted) (quoting Stacks v. Saunders, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)). The claim also "must be stated with particularity, and the plaintiff must, at a minimum, allege the time, place and content of the misrepresentations; the defendant's fraudulent intent; the fraudulent scheme; and the injury resulting from the fraud." Id.

The essence of Hale's fraud claim is that Defendants fraudulently induced her to enter into an at-will employment agreement by making false representations to her. The alleged "false and misleading" representations at issue consist of the following four statements:

> (1) That Plaintiff could accept as truth [Woodward's] assurance that her decision to suspend her previous work activities could be safely made, in reliance upon his promises; and
>
> (2) That CloudCookies, LLC was financially secure and stable, and Plaintiff would be paid promptly without conditions, reservations, or set-offs of any type, upon completion of the sales procured by Plaintiff from the present and future LLC customers; and

5

(3) The LLC company had a history of employment stability for its sales representatives due to its employee-friendly personnel practices; and

(4) Finally, that Plaintiff certainly was not advised in advance of her efforts, that she would be expected to advance travel expenses on behalf of Mr. Woodward or herself, for the benefit of the company, as soon occurred (without her knowledge or permission in the manipulation of her bank account) for reasons that remain undisclosed to the Plaintiff at this time.

(Doc. No. 1-1 ¶¶ II.E, II.D). Even construing these statements in the light most favorable to Hale, accepting them as true, and drawing all inferences in her favor, the Court does not find that these statements support a claim for fraud.

As to the first statement, it is unclear what misleading "assurance" or "promises" Hale relied on to believe she could "suspend her previous work activities" safely. "Fraudulent inducement, recognized in Tennessee as promissory fraud, requires that the misrepresentation be made without the present intention to carry it out." SunTrust Banks, Inc., 447 F.3d at 931. Hale does not allege any conversations she had with Woodward, in which Woodward promised her she could "suspend her previous work activities" safely (whatever that means) "without the present intention to carry" out that promise. Without more, the Court can only speculate as to what Hale's "previous work activities" were, and what Woodward may have said to prompt Hale's belief about her job security as an at-will employee.

Regarding the second and third statements, Hale fails to allege how she detrimentally relied on Woodward's opinions about the financial viability of CloudCookies, LLC. Even assuming Woodward made a false "promise" that "CloudCookies, LLC was financially secure and stable," and that the "company had a history of employment stability for its sales representatives due to its employee-friendly personnel practices," the Complaint does not explain how those promises alone damaged Hale. See Stacks, 812 S.W.2d at 592. Hale does not allege, for example, that her

6

acceptance of Defendants' job offer caused her to lose benefits from her previous employment, thwarted her career objectives, caused a loss of professional opportunity and reputation, or damaged her career growth and potential. See Kwon v. Yun, 606 F. Supp. 2d 344, 360–61 (S.D.N.Y. 2009) (citations omitted). The Complaint instead makes a conclusory allegation that Defendants' "tortious misrepresentations" caused Hale $100,000.00 in damages, without explaining how she was injured above and beyond the $12,197.02 she allegedly is owed for commission and travel reimbursements. (See Doc. No. 1-1 ¶¶ II.F, VII). But if Defendants made "promises" to Hale that she "would be paid promptly" a 10% commission on qualifying sales, (id. ¶ II.E, II.B), and Defendants refused to pay her that amount, then Hale's resulting damages for her unpaid commissions (as alleged in the Complaint) would sound in contract, not tort. See Mid-South Milling Co., Inc. v. Loret Farms, Inc., 521 S.W.2d 586, 588 (Tenn. 1975) ("A contract may be negligently or fraudulently breached and the cause of action remains in contract rather than in tort.").

As to the fourth statement, Hale does not allege how she detrimentally relied on Defendants' *failure* to inform her that she was required to pay out-of-pocket for travel expenses and then seek reimbursement. The Court acknowledges that fraud itself "can be the concealment or nondisclosure of a known fact when there is a duty to disclose." Justice v. Anderson Cnty., 955 S.W.2d 613, 616 (Tenn. Ct. App. 1997) (citations omitted). However, "[c]onclusory statements of reliance are not sufficient to explain with particularity how [the plaintiff] detrimentally relied on the alleged fraud[.]" Evans v. Pearson Enters., 434 F.3d 839, 852–53 (6th Cir. 2006). Hale offers nothing more than vague, conclusory allegations of fraud and reliance on Defendants' nondisclosure of company travel reimbursement procedures. And, in any event, any damages flowing from her unreimbursed travel expenses would be included in the $12,197.02 "for the

documented sales projects and travel reimbursement" she seeks pursuant to her contract claim.[2] (Doc. No. 1-1 ¶ II.F).

Hale's belated opposition relies heavily on the Tennessee Supreme Court's opinion in Brungard v. Caprice Records, in which a music artist sought recission of a recording contract because the record company "fraudulently induced her to enter into the contract." 608 S.W.2d 585, 588 (Tenn. 1980). The artist claimed that the recording studio misled her into believing it "would make a financial commitment to promote her record" and that the nature of its "business was selling records" when, in fact, the studio made more than 99% of its money by selling "production services to artists such as the plaintiff." Id. at 589.

The fraudulently induced business transaction in Brungard, however, is much different from the at-will employment agreement in this case. Notably, there are no allegations here that Defendants gave Hale "a false impression of the character" of her employment. See id. at 590. There are no allegations explaining how or why Woodward made his "assurances" with the intent not to perform. See Am. Cable Corp. v. ACI Mgmt., Inc., No. M1997-00280-C0A-R3-CV, 2000 WL 1291265, at *5 (Tenn. Ct. App. Sept. 14, 2000) (holding that "[i]n the context of a promissory fraud claim, the mere fact that the promisor failed to perform the promised act is insufficient by itself to prove fraudulent intent"). Instead, the Complaint merely alleges that Woodward's intentional misrepresentations about Hale's ability to receive commissions and safely "suspend her previous work activities" fraudulently induced her to enter into an at-will employment agreement with Defendants. (See id. ¶ III.A). Although at least one Tennessee court from the 1990s found similar allegations to be "minimally sufficient to state a claim for promissory fraud,"

---

[2] The Complaint alleges that travel expenses were "improperly and unlawfully removed and converted from her Tennessee bank account," but it does not allege a separate cause of action for conversion. (Doc. No. 1-1 ¶ II.F).

see Lee v. Hippodrome Oldsmobile, Inc., No. 01A01-9705-CV-00202, 1997 WL 629951, at *2 (Tenn. Ct. App. Oct. 14, 1997), these types of conclusory allegations are no longer sufficient under Twombly, Iqbal, and their progeny. Thus, Hale's "reckless/intentional tortious misrepresentation" claim must be dismissed.

        C.      <u>The Complaint Fails to State a Claim Under the Tennessee Wage Regulation Act</u>

Defendants also ask this Court to dismiss Hale's wage violation claims as a matter of law because there is no private right of action for a violation of Tenn. Code Ann. §§ 50-2-103 and 50-2-104. (Doc. No. 9 at 7–8). The Court has already held "that there is no private right of action under Tenn. Code. Ann. § 50-2-103," Rositano v. Freightwise, LLC, No. 3:20-cv-00420, 2021 WL 1174589, at *7 (M.D. Tenn. Mar. 26, 2021), and it agrees with Defendants that there is no private right of action under § 50-2-104. These two provisions are part of the Tennessee Wage Regulation Act ("TWRA"), and the Tennessee Legislature "clarified that the TWRA does *not* confer a private right of action and is only enforceable by the Department of Labor and Workforce." Harris v. Tenn. Rehabilitative Initiative in Correction, No. M2013–01858–COA–R3–CV, 2014 WL 1887302, at *2 n.3 (Tenn. Ct. App. May 8, 2014) (citations omitted); see also Abadeer v. Tyson Foods, Inc., 975 F. Supp. 2d 890, 915–19 (M.D. Tenn. 2013) (discussing the legislative history of the TWRA and holding that "no private right of action was ever intended" by the Tennessee legislature).

Hale ostensibly agrees that there is no private right of action under the TWRA, and instead argues that she brought these claims solely so the Court could make "specific findings of fact in the present civil matter." (Doc. No. 1-1 ¶ VI.A). Hale wants these "findings of fact" so she can send them to the Tennessee Department of Labor and hopefully prompt an "investigation and administrative action." (Id.; see also Doc. No. 14 at 6). Hale is, of course, free to send the Tennessee Department of Labor materials on her own without court intervention. But the Court

9

refuses to expend judicial resources making "findings of fact," and ultimately issuing an advisory opinion, merely so Hale can convince the Tennessee Department of Labor to bring an enforcement action. As a result, the Court will dismiss Hale's statutory wage claims.

### D. The Court No Longer Has Diversity Jurisdiction Over Hale's Claims

The Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (citation omitted). "A district court has subject-matter jurisdiction where the complaint (1) raises a federal question, or (2) where the parties have diversity of citizenship and the amount in controversy exceeds $75,000." Wilson v. Allstate Ins. Co., No. 17-4248, 2018 WL 6422853, at *1 (6th Cir. June 25, 2018) (citing 28 U.S.C. §§ 1331, 1332). Here, because the Complaint does not state a federal claim, the Court has subject-matter jurisdiction over Hale's remaining state law claims only if it has diversity jurisdiction.

Given the Court's rulings above, there is no longer a sufficient amount in controversy to meet the requirements of § 1332. Although Hale requests $100,000.00 in "exemplary or punitive damages" to compensate "for the tortious misrepresentations made by the Defendants," (Doc. No. 1-1 ¶ VII.A), the tort claims have been dismissed. At most, Hale can recover the $12,197.02 in compensatory damages for her contract-based claims based on the "documented sales projects and travel reimbursement completed by her during her brief tenure with the Defendants." (See id. ¶ II.F). Moreover, under Tennessee law, "punitive damages are not available in a breach of contract case" unless the circumstances are "egregious" and the plaintiff provides "clear and convincing proof that the defendant has acted either intentionally, fraudulently, maliciously, or recklessly." Rogers v. Louisville Land Co., 367 S.W.3d 196, 212 n.14 (Tenn. 2012). Hale comes nowhere near meeting that standard. Thus, it appears to a legal certainty that "the matter in controversy" does *not* "exceed[] the sum or value of $75,000," and the Court no longer has subject matter

jurisdiction.  See 28 U.S.C. § 1332(a)(1); see also Charvat v. NMP, LLC, 656 F.3d 440, 447 (6th Cir. 2011).

The Sixth Circuit instructs that "even when a court lacks subject matter jurisdiction over an initial complaint, it may resolve counterclaims where it has an independent basis for jurisdiction over those claims." NOCO Co. v. OJ Commerce, LLC, 35 F.4th 475, 480–81 (6th Cir. 2022) (citations omitted).  The Court finds, however, that it does not have an independent basis for jurisdiction over Defendants' counterclaims.  Although Defendants raise a federal claim under the Federal Defend Trade Secrets Act, the Supreme Court has "held that federal-question jurisdiction depends on the contents of a well-pleaded complaint, and may not be predicated on counterclaims." See Vaden v. Discover Bank, 556 U.S. 49, 56 (2009) (citations omitted).  Similarly, even if this Court could predicate diversity jurisdiction on a counterclaim filed in a removed case,[3] Defendants have not alleged that Hale's failure to return her laptop (which has an "estimated value" of $4,000) exceeds the sum or value of $75,000 in damages.  (See Doc. No. 10 at ¶ 31).

The only other way the Court could exercise jurisdiction over Hale's remaining claims is through supplemental jurisdiction under 28 U.S.C. § 1367(c).  "[I]f some event subsequent to the complaint reduces the amount in controversy, . . . the court must then decide in its discretion whether to retain jurisdiction over the remainder of the case." Farrell v. Macy's Retail Holdings, Inc., 645 F. App'x 246, 249 (6th Cir. 2016) (quoting Shanaghan v. Cahill, 58 F.3d 106, 112 (4th Cir. 1995)); see also Charvat v. NMP, LLC, 656 F.3d 440, 446 (6th Cir. 2011) ("[S]upplemental

---

[3] Courts in this Circuit have held that they "must disregard the value of Defendant's Counterclaim in deciding whether the jurisdictional threshold has been met" because the Sixth Circuit has "consistently held that the amount in controversy for federal diversity jurisdiction purposes is determined as of the time the action is commenced." See McMahon v. Alternative Claims Serv., Inc., 521 F. Supp. 2d 656, 658 (N.D. Ohio 2007) (collecting cases); SMTS Grp. V. Hardy, No. 1:17-cv-00453-RJJ, 2017 WL 3252209, at *2 (W.D. Mich. July 5, 2017) (citation omitted).

jurisdiction is discretionary, not mandatory."). "After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims." Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1255 (6th Cir. 1996). "This presumption follows from the common-sense recognition that our state-court brethren are better equipped to address issues of state law." Martinez v. City of Cleveland, 700 F. App'x 521, 523 (6th Cir. 2017). Given this presumption, the Court declines to exercise supplemental jurisdiction over any remaining state-law claims in this case.

Pursuant to the rules governing cases removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added). Accordingly, the Court will remand, rather than dismiss, this action so the parties can litigate Hale's remaining claims in state court.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 8) will be granted, and this case will be remanded for lack of subject-matter jurisdiction.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE